# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
                          )
     v.                 )
                          )      ID Nos. 2106004632; 2106004704
KEITH GIBSON,         )             2107000202; 2107000514
                          )
   Defendant.       )

Submitted: November 29, 2022
Decided: December 5, 2022

## ORDER

*Upon Defendant Keith Gibson's Pro Se Motions Pursuant to Superior Court Criminal Rule 47:*

*Motion to Dismiss Indictment*
**DENIED**

*Motion to Suppress Evidence from Illegal Stop June 8, 2021 Arrest – Franks Challenge/Reverse - Franks*
**DENIED**

*Miranda Violation Notice, Treated as Motion to Suppress,*
**DEFERRED.**

*Motion to Suppress Improperly Formed, Constitutionally Defective Arrest Warrants, and Those Evidences [sic] Derived from the Arrest*
**DENIED**

*Motion to Suppress Evidence Seized from Defendant's Philadelphia, Pennsylvania Residence 2753 North Croskey Street Phila, PA 19132*
**DEFFERED.**

Matthew B. Frawley, Esquire and John W. Downs, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, Delaware 19801, Attorneys for the State.

Megan J. Davies, Esquire, 716 Tatnall Street, Wilmington, Delaware 19801; Richard Sparaco, Esquire, LAW OFFICE OF RICHARD SPARACO, LLC, 1920 Fairfax Avenue, Cherry Hill, N.J 08003, and P.O. Box 371 Lewes, DE 19958, Attorneys for Defendant Keith Gibson.

Keith Gibson, SBI# 00303443, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, DE 19977, *pro se* pursuant to Superior Court Criminal Rule 47.

**WHARTON, J.**

This 5th day of December, 2022, upon consideration of Defendant Keith Gibson's five *pro se* motions: (1) Motion to Dismiss Indictment;[1] (2) Motion to Suppress Evidence Derived from the Illegal Stop June 8, 2021 Arrest – *Franks* Challenge/Reverse - *Franks*;[2] (3) Miranda Violation Notice, treated as Motion to Suppress;[3] (4) Motion to Suppress Improperly Formed, Constitutionally Defective Arrest Warrants, and Those Evidences [sic] Derived from the Arrest;[4] (5) Motion to Suppress Evidence Seized from Defendant's Philadelphia, Pennsylvania Residence 2753 North Croskey Street Phila, PA 19132;[5] and the State's response,[6] it appears to the Court that:

1.      On July 6, 2021, Gibson was indicted in a forty-one-count indictment.[7] His charges include Murder First Degree (four counts);[8] Attempted Murder First Degree (one count) and multiple counts of Robbery First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Possession of a Firearm by a Person Prohibited ("PFBPP").  The charges stem from five separate

---

[1] D.I. 68. (Unless otherwise noted, Docket Item numbers are from ID No. 2106004632.)
[2] D.I. 69.
[3] D.I. 70.
[4] D.I. 71.
[5] D.I. 73.
[6] D.I. 78.
[7] Indictment, D.I. 1.
[8] The four First Degree Murder counts are comprised of one intentional murder charge and one felony murder charge for each of the two homicide victims.

criminal investigations that took place between May 15, 2021 and June 8, 2021. All of Gibson's purported crimes in this case took place in either the City of Wilmington or the contiguous Town of Elsmere, Delaware.

2. The State alleges that on May 15, 2021, Gibson shot and killed Metro PCS employee Leslie Basilio while robbing the store where she worked in Elsmere.[9] Gibson is also accused of stealing her car.[10] On June 5, 2021, Gibson is alleged to have shot and killed Ronald Wright,[11] supposedly also stealing his sling bag.[12] The next day, June 6, 2021, Gibson is accused of shooting and attempting to kill Belal Almansoori while robbing the Good Deli where Almansoori worked.[13] During the early morning hours of June 8, 2021, Gibson is accused of stealing Secret Harris' phone, hitting her with a gun, and shooting her as she fled in her car.[14] Later that morning, Gibson (along with an alleged co-conspirator, Alexander Delgado) is accused of robbing a Rite Aid Pharmacy and threatening an employee, Sandra Collins.[15]

3. Eugene J. Maurer, Jr., Esquire, and Elise K. Wolpert, Esquire were assigned to represent Gibson through the Office of Conflict Counsel under the

---

[9] State's Resp. to Def.'s Motion to Sever at ¶ 2, D.I. 55.
[10] *Id.*
[11] *Id.,* at ¶ 3.
[12] *Id.*
[13] *Id.,* at ¶ 4.
[14] *Id.,* at ¶ 5.
[15] *Id.,* at ¶ 6.

umbrella of the Office of Defense Services. The relationship between counsel and Gibson was strained, almost from the beginning, resulting in defense counsel filing their initial motion to withdraw as counsel on September 29, 2021.[16] That motion was denied On October 29, 2021 when counsel and Gibson agreed to attempt to reconcile their differences.[17] Those attempts were unsuccessful, giving rise to defense counsel's second request to withdraw as counsel, filed on August 16, 2022.[18]

4. The Court held a hearing on the Second Motion to Withdraw as Counsel on August 31, 2022. The crux of the dispute between counsel and Gibson seemed to be that Gibson wanted counsel to file certain motions that counsel did not believe they could pursue ethically because they lacked arguable merit.[19] Accordingly, the Court granted Gibson limited permission to pursue on his own the motions be wanted counsel to file.[20] On September 1, 2022, the day after the hearing, the Court wrote Gibson explaining the scope of that limited permission.[21] Specifically, the

---

[16] Mot. to Withdraw as Counsel, D.I. 14.
[17] D.I. 17.
[18] D.I. 61.
[19] Prior counsel did file six motions on Gibson's behalf: (1) Motion to Sever Charges (D.I. 45); (2) Motion for Disclosure of Non-Recorded Portions of Witness Statements (D.I 42); (3) Motion to Suppress Defendant's Statement (D.I. 40); (4) Motion to Suppress Evidence Seized from Defendant's iPhone (D.I. 41); (5) Motion to Identify 404(b) Evidence (D.I. 39); and (6) Motion to Exclude Admission of Photo Lineup (D.I. 44). The Court issued an Order addressing those motions on November 2, 2022. *State v. Gibson,* 2022 WL 16642860 (Del. Super. Ct. Nov. 2, 2022).
[20] *See,* D.I. 65, 66.
[21] D.I. 66.

Court permitted Gibson to address by way of motion his contention that the arrest warrants in ID Nos. 2106004704 and 2106004632 were constitutionally defective because Wilmington Police Cpl. Ryan Kilmon and Det. A. Ford made material misstatements and material omissions in their affidavits in order to obtain them.[22] It also permitted him to address his claim alleging that the prosecution and police engaged in misconduct related to pretrial publicity and in securing the arrest warrants and indictment.[23] Finally, it allowed Gibson to advance his contention that the arrest warrant in ID No. 2106004632 was not supported by oath or affirmation and was not signed by the affiant or the issuing judicial authority.[24]

5.    At the hearing, it became abundantly clear to the Court that no workable attorney/client relationship existed between counsel and Gibson and had not existed for some time.  Nor was it remotely possible that one could be resurrected.  Gibson maintained that he desired counsel, just not the counsel assigned to him.[25]  On November 3, 2022, the Court granted counsel's second motion to withdraw.[26]

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] Gibson maintained his opposition to current counsel, even in the face of the Court advising him that it potentially could deem him to have waived or forfeited his right to counsel.
[26] D.I. 81.

6. Gibson filed the above listed motions on September 16, 2022.[27] According to the State, Gibson's filings total 274 pages.[28] The Court has not done its own count but has no basis to disagree. Unsurprisingly, and not atypically for *pro se* filings, Gibson's motions lack a certain degree of legal focus and perspective, and are, at times, difficult to understand. The State, while expressing some difficulty in discerning Gibson's claims, has identified what it believes to be seven separate applications.[29] Although the Court did not request a reply to the State's response, Gibson has submitted one.[30] In addressing the motions, the Court attempts to remain faithful to the format selected by Gibson. To the extent any particular motion seeks more than one form of relief, the Court addresses those forms of relief in the context of the motion in which they are raised.

7. **Motion to Dismiss Indictment.**[31] In this motion, Gibson asks the Court to dismiss the indictment against him. He argues: (1) witnesses who identified him entering and exiting 812 W. 5th Street, the property next-door to where he was arrested "should be produced at trial for cross-examination;" and (2) prejudicial adverse publicity, about the offenses charged and his own background, including

---

[27] Gibson also filed an Affidavit in Conjunction with Motion to Suppress regarding the Truthfulness of the Statements Contained in the Search Warrant, D.I. 72.
[28] *See,* State's Response, D.I. 78.
[29] *Id.*
[30] D.I. 79.
[31] D.I. 68.

reported comments made by police and prosecutors, has prejudiced his right to a fair trial.[32] In his reply, Gibson clarifies that the indictment should be dismissed because the State will not be able to present evidence sufficient to meet its burden of proving him guilty beyond a reasonable doubt.[33] None of these arguments is persuasive. Whether the State is able to meet its burden of proof at trial is a matter to be determined at trial, not before via motion practice. Further, what witnesses the State decides to present is a matter totally within the State's discretion as it attempts to meet that burden. To the extent the defense wishes to present any particular witnesses in Gibson's defense it is free to do so and has the authority of the Court behind it to compel such witnesses' attendance. Gibson's complaints about adverse pretrial publicity and the State's role in causing it are similarly premature. The Court has no doubt that it will be able to empanel a jury free from the taint of any adverse pretrial publicity as it has done in countless other trials with equal or greater attendant notoriety.

8. **Motion to Suppress Evidence Derived from the Illegal Stop June 8, 2021 Arrest –** *Franks* **Challenge/Reverse** *Franks*.[34] In this motion Gibson recites his version of the events that occurred in the backyard of 814 W. 5th Street where he was taken into custody by Cpl. Ryan Kilmon of the Wilmington Police and other

---

[32] *Id.*
[33] D.I. 79.
[34] D.I 69.

Wilmington officers through when he was presented to a magistrate and bail was set.[35] He contends that Cpl. Kilmon and Det. A. Ford made material misstatements and material omissions in the arrest warrant affidavits they authored in ID Nos. 2106004704 and 2106004632 respectively.[36] As a result, he asks the Court to "exclude all evidence from the illegal stop which depends upon false portions of the affidavits with which the affidavit of probable cause cannot stand."[37] The motion also contains a separate double jeopardy claim.[38] In an accompanying "Memorandum of Law and Additional Facts and Details," Gibson argues, *inter alia*, that Cpl. Kilmon lacked reasonable, articulable suspicion to stop him in the backyard of 814 W. 5th Street.

9. To the extent that Gibson's motion challenges the propriety of his arrest by Cpl. Kilmon, it is without merit. He does not challenge the fact that a robbery occurred at Rite Aid at 800 W. 4th Street at approximately 8:30 a.m., nor does he challenge the description of one of the robbers as being a black male[39] wearing dark or grey clothing, armed with a handgun, or that a GPS tracking device placed the proceeds of the robbery in the vicinity of 816 W. 5th Street and that Cpl. Kilmon

---

[35] *Id.,* at 2-7.
[36] The arrest warrant in ID No 2106004704 charges Gibson with offenses occurring in the backyard of 814 W. 5th Street when he was taken into custody and the warrant in ID No. 2106004632 charges him with offenses related to the Rite Aid robbery.
[37] D.I. 69, at 38.
[38] *Id.,* at 41-49.
[39] Gibson is a black male, D.I. 29 (I.D. No. 2106004704).

encountered him at about 9:15 a.m. in the rear yard of 814 W. 5th Street, all as set out in Cpl. Kilmon's affidavit.[40] Beyond that, Gibson's own description of what he alleges occurred supports Cpl. Kilmon's decision to detain and arrest him. He writes that he was "in the rear/backyard of 814 W. 5th Street in the area behind this backyards [sic] handicap ramp which only allows as much as the chest area and head area for visibility."[41] He then recites that Cpl. Kilmon appeared at the backyard's rear gate and appeared to be staring at him.[42] Cpl. Kilmon then forced his way into the backyard, ordered Gibson to exit from behind the handicap ramp, raise his hands and turn and face backward toward the fence between 814 and 816 W. 5th Street, whereupon Gibson was searched.[43] He then describes Cpl. Kilmon removing the body armor he was wearing as well as his utility belt, holster and knife.[44] Gibson also acknowledges he had drugs in his "carry/shoulder bag."[45]

10. Under *Terry v. Ohio*, detention of a suspect by law enforcement is unlawful unless it is premised upon a reasonable articulable suspicion of criminal activity.[46] In making a determination whether reasonable, articulable suspicion is

---

[40] *Id.*
[41] *Id.*, at 2.
[42] *Id.*, at 3.
[43] *Id.*, at 4.
[44] *Id.*
[45] *Id.*
[46] 392 U.S. 1 (1968).

present, a court looks at the totality of the circumstances.[47]   It must consider "inferences and deductions that a trained officer could make which 'might well elude an untrained person.'"[48]  Cpl. Kilmon encountered Gibson shortly after the Rite Aid robbery, within about a block of Rite Aid, next door to where the GPS device placed the proceeds of the robbery, partially concealed behind a handicapped ramp in a fenced in backyard.  When Gibson emerged from behind the handicapped ramp, he was wearing a ballistic vest, an empty holster, and a knife.  When Cpl. Kilmon asking him what he was doing, he said he was selling drugs.  It is clear to the Court that Cpl. Kilmon had reasonable, articulable suspicion to make a *Terry* stop, and after having made that stop , Cpl. Kilmon had probable cause to arrest Gibson.

11.    Despite a reference to "*Franks* Challenge/Reverse-*Franks*" in the caption of the motion and the conclusory statement immediately following that the motion "consist[s] of a *Franks* Challenge and Reverse-*Franks* Challenge,"[49] there appears to be no actual discussion of *Franks v. Delaware*[50] itself in Gibson's 49-page motion or in the accompanying 90-page Memorandum of Law.  Some discussion is in order.  In *Franks*, the United States Supreme Court held that "where a defendant makes a substantial preliminary showing that a false statement

---

[47] *Jones v. State*, 745 A.2d 856, 862 (Del. 1999).
[48] *Harris v. State*, 806 A.2d 119, 127 (Del. 2002).
[49] *Id.,* at 1.
[50] 438 U.S. 154 (1978).

knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."[51] Under *Franks*, a false statement in an affidavit can serve as a basis to set aside a warrant only if a reviewing court finds that the false statement was necessary to the finding of probable cause.[52] Further, the reviewing court makes the required finding by reviewing the affidavit with the false statement removed to determine if the remaining information in the affidavit is sufficient to find probable cause.[53] By contrast, a reverse-*Franks* challenge is predicated on material facts allegedly omitted from the affidavit. "If the police omit facts [from a search warrant affidavit] that are material to a finding of probable cause with reckless disregard for the truth, the rationale of *Franks v. Delaware* applies," and the evidence obtained as a result of that search warrant must be suppressed.[54] In order to prevail on a reverse-*Franks* claim, a defendant must show by a preponderance of the evidence that the police knowingly and intentionally, or with reckless disregard for the truth, omitted information from the warrant affidavit that

---

[51] *Id.,* at 155-6.
[52] *Wingate v. State,* at *3, 2018 WL 3005445 (Del. Jun. 14, 2018).
[53] *Id.*
[54] *Rivera v. State,* 7 A.3d 961, 968 (Del. 2010) (quoting *Sisson v. State,* 903 A.2d 288, 300 (Del. 2006)).

11

was material to a finding of probable cause.[55]  A court reviewing a reverse-*Franks* claim should address whether the alleged omission was material because, if the omissions were immaterial, the affiant's intent likewise is immaterial.[56]

12.     With the foregoing guidance in mind, the Court has carefully reviewed both of the controverted affidavits, Gibson's version of events, the statements he alleges are false, and what he alleges are material omissions.  The Court concludes that Gibson has failed to make a substantial preliminary showing that statements in the affidavits were materially false, much less intentionally false or made with a reckless disregard for the truth.  Similarly, none of his claimed omissions were material to the finding of probable cause.

13.     With regard to Cpl. Kilmon's affidavit, Gibson first cites as a material misstatement Cpl. Kilmon's statement that he started checking backyards from 814 W. 5th Street as opposed to "from the area of 812 W. 5th Street" in Gibson's telling.[57] Gibson then appears to allege that Cpl. Kilmon did not see him before he went behind the handicap ramp.[58]  Therefore, Cpl. Kilmon was unable to observe him wearing dark pants and a ballistic vest and his assertion in his affidavit to the contrary is false.[59]  He also claims that he was not wearing cargo pants, also contrary to Cpl.

---

[55] *Id.*
[56] *Id.,* at 469.
[57] D.I. 69, at 18.
[58] *Id.*
[59] *Id.*

Kilmon's statement in his affidavit. None of these alleged misstatements is material, and even if any were, the Court finds that adequate probable cause would exist in the affidavit if they were removed.[60] Similarly, the Court has reviewed the list of alleged omissions from Cpl. Kilmon's affidavit.[61] None of the claimed omissions, individually, or in the aggregate, would have affected the finding of probable cause.

14. The Court next turns to Gibson's arguments regarding Det. Ford's affidavit. Gibson claims that the evidence seized in conjunction with his arrest should be suppressed because Det. Ford's affidavit contains material misstatements, omissions, and inconsistencies with Cpl. Kilmon's affidavit. But, there was a valid basis for seizing evidence from Gibson pursuant to Cpl. Kilmon's arrest of him, independent of Det. Ford's subsequent affidavit. For that reason, the Court need not consider Gibson's complaints about the affidavit authored by Det. Ford.

15. Finally, Gibson asserts a double jeopardy claim. This assertion betrays a fundamental misunderstanding of the concept of double jeopardy by Gibson. The warrants obtained by Cpl. Kilmon and Det. Ford were for different offenses. The fact that there was some overlap in the probable cause affidavits does not trigger a double jeopardy claim. Gibson has not been placed in jeopardy of conviction of the same offence twice. In fact, at this stage of the proceeding, he has not yet been

---

[60] *See,* ¶¶ 9, 10, *supra.*
[61] D.I. 49, at 21-24.

13

placed in jeopardy once. The Motion to Suppress Evidence Derived from the Illegal Stop June 8, 2021 Arrest – *Franks* Challenge/Reverse-*Franks* is **DENIED.**

16.    **Miranda Violation Notice, Treated as Motion to Suppress.**[62]    The statement at issue in this motion is Gibson's statement to Cpl. Kilmon that he was "selling drugs" which he alleges occurred after he was taken into custody and was made without benefit of *Miranda* warnings.[63]  The Court previously granted prior counsel's motion to suppress statements made to the Philadelphia Police after Gibson had invoked his right to remain silent.[64]  The State contends that this motion largely mirrors Gibson's earlier successful motion and suggests that the motion is moot.[65]  But, the State is mistaken.  Gibson's *pro se* motion seeks to suppress his statement to Cpl. Kilmon, whereas prior counsel's motion was addressed to statements to the Philadelphia Police.  Because the State has not addressed the actual statement sought to be suppressed, and because Cpl. Kilmon's affidavit does not address the statement, the Court finds there to be an insufficient record at this time to resolve the motion.  Accordingly, Gibson's Miranda Violation Notice, treated as Motion to Suppress is **DEFERRED** for an evidentiary hearing.[66]

---

[62] D.I. 70.

[63] *Id.*

[64] *State v. Gibson,* at *5-6.

[65] D.I. 78.

[66] The timing of such a hearing depends upon when the State intends to seek admission of the statement.  For example, if the State only intends to seek it's

17. **Motion to Suppress Improperly Formed, Constitutionally Defective Arrest Warrants, and those Evidences [sic] Derived from the Arrest.[67]** In this motion, Gibson claims that the arrest warrant in ID No. 2106004632 was defective because it was not signed by Det. Ford under oath or affirmation, nor was the warrant signed by the issuing judicial officer.[68] At the hearing on August 31, 2022, the Court addressed this issue directly with Gibson.[69] The Court showed Gibson the arrest warrant in ID No. 2106004632 which stated that it was supported by oath or affirmation of the affiant and bore the electronic signatures of both Det. Ford and the issuing judicial officer.[70] After he examined the document, Gibson agreed that the warrant in fact was supported by oath or affirmation and was signed by both Det. Ford and the issuing magistrate.[71] To the extent Gibson's motion presents a different argument concerning the warrant obtained by Det. Ford, it is not clear to the Court what that argument is. The Court has carefully examined the warrant and does not find it to be "improperly formed" or "constitutionally defective." Accordingly, the Motion to Suppress Improperly Formed, Constitutionally Defective Arrest Warrants, and Those Evidences [sic] Derived from the Arrest is **DENIED.**

---

admission in conjunction with Trial Group III (drug-related charges), the hearing can be deferred until prior to that trial. *See, State v. Gibson,* at *3.

[67] D.I. 71.

[68] *Id.*

[69] *See,* the Court's letter to Gibson dated September 1, 2022, D.I. 66.

[70] *Id.,* at n. 2.

[71] *Id.*

18. **Motion to Suppress Evidence Seized from Defendant's Philadelphia Pennsylvania Residence 2753 North Croskey Street Phila, PA 19132.**[72]    In this motion, Gibson moves to suppress evidence seized pursuant to two search warrants executed at what he asserts is his residence in Philadelphia.[73]  In his motion, Gibson states that his prior counsel did not provide him with copies of the Philadelphia search warrants.[74]  Instead, he attaches a copy of an affidavit of probable cause authored by Det. Grace of the Philadelphia Police Department, presumably in support of an application for an arrest warrant.[75]  It appears from the State's response to Gibson's motions that it had not provided prior counsel with copies of the Philadelphia search warrants.  The State proposes to provide Gibson's new counsel with copies of the search warrants once it determines that it has complete copies of them.  The Court is not in a position to make an informed ruling on the propriety of the Philadelphia search warrants without an opportunity to review them.  For that reason, a ruling on this motion is **DEFERRED.**[76]

**THEREFORE,** for the reasons stated above, Gibson's Motion to Dismiss Indictment, Motion to Suppress Evidence Derived from the Illegal Stop June 8, 2021

---

[72] D.I. 73.

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] The State shall provide complete copies of the search warrants as soon as possible so that counsel and Gibson may confer and decide how best to address any suppression issues.

Arrest – *Franks* Challenge/Reverse-*Franks*, and Motion to Suppress Improperly Formed, Constitutionally Defective Arrest Warrants, and Those Evidences [sic] Derived from the Arrest are **DENIED**. Rulings on Gibson's Notice of Miranda Violation, treated as Motion to Suppress and Motion to Suppress Evidence Seized from Defendant's Philadelphia, Pennsylvania Residence 2753 North Croskey Street Phila, PA 19132 are **DEFERRED**. The Court will set deadlines and procedures for resolving the deferred motions.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.